Hayes, James H
Name
SDCC P.O. Box 208
Indian Springs, NV 89070
1175077
Prison Number

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

James H. Hayes _____ ,
                Plaintiff,

vs.

City of Las Vegas _____ ,
Clark County _____
Mirage/MGM Hotel Casino
Steve Wolfson, Joseph Lombardo
Aaron Ford _____
                Defendant(s).

CASE NO. 2:20-cv-02122-JCM-EJY
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
PURSUANT TO
42 U.S.C. § 1983**

"Amended Complaint"

### A. JURISDICTION

1)    This complaint alleges that the civil rights of Plaintiff, James H. Hayes
                                            (Print Plaintiff's name)

who presently resides at Southern Desert Correctional Center , were

violated by the actions of the below named individuals which were directed against

Plaintiff at Las Vegas, NV (Mirage Hotel) on the following dates
           (institution/city where violation occurred)

January 21, 2019 , January 28, 2019 , and February 27, 2019
   (Count I)          (Count II)         (Count III)

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

2) Defendant _MIRAGE/MGM Hotel Casino_ resides at _3400 S. Las Vegas Blvd.; LV, NV_
       (full name of first defendant)             (address if first defendant)
and is employed as _OWNER_ . This defendant is sued in his/her
         (defendant's position and title, if any)
     ✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _POSSESSED the power and authority to adopt policies and
prescribe rules, regulations, and practices affecting all facets of the training, supervision,
control, and employment of its security officers_

3) Defendant _James McGrath_ resides at _4024 Palomar Blvd; Lexington, 40513_
       (full name of first defendant)          (address if first defendant)
and is employed as _Furniture Store_ . This defendant is sued in his/her
         (defendant's position and title, if any)
     ✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _was at all times relevant to this action the alleged victim
who made false allegations_

4) Defendant _City of Las Vegas_ resides at _Las Vegas, Nevada_
       (full name of first defendant)         (address if first defendant)
and is employed as _GOVERNMENT ENTITY_ . This defendant is sued in his/her
         (defendant's position and title, if any)
     ✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _Is a government entity, organized and existing under
the laws of the state of Nevada_

5) Defendant _AARON FORD_ resides at _Carson City, NV 89701_
       (full name of first defendant)         (address if first defendant)
and is employed as _Attorney General_ . This defendant is sued in his/her
         (defendant's position and title, if any)
     ✓ individual ✓ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _was at all times relevant to this action the
Attorney General of the state of Nevada_

5) Defendant _Clark County_ resides at _Las Vegas, Nevada_, and is employed as _government entity_. This defendant is sued in his/her ✓ individual ✓ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: _is a government entity organized and existing under the laws of the State of Nevada_

6) Defendant _Steve Wolfson_ resides at _Clark County, Nevada_, and is employed as _District Attorney_. This defendant is sued in his/her ✓ individual ✓ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: _was at all times relevant to this action the District Attorney of Clark County District Attorney's office_

7) Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional statutes, list them below.

_____

_____

### B. NATURE OF THE CASE

8) Briefly state the background of your case.

This case involves the illegal detentions and seizing of Plaintiff James H. Hayes by Mirage Hotel Security and wrongful arrests by the LVMPD in violation of his constitutional rights. On January 26, 2019, plaintiff was arrested by the LVMPD for Attempt Burglary relating to an alleged incident involving James McGrath hotel room at Mirage hotel. Plaintiff case was assigned to Justice Court Magistrate Dept 14 CASE NO C338442-1 who held

## Nature of Case (Continue)

1  a preliminary hearing on the matter on February 26,
2  2019. In which alleged victim James McGrath testified
3  under oath that plaintiff was not the perpetrator of
4  the alleged Burglary and 100% sure of it and that alleged
5  perpetrator only stood in doorway said sorry and closed
6  the door without incident (See preliminary hearing transcript
7  and criminal complaint.)

8      Whereas, there was no corpus delecti; crime is a breach
9  of laws or governing authority. While this alleged offense was
10  a alleged violation of the law it was not a crime. Notwith-
11  standing, proof of the corpus delecti that is required in all
12  criminal matters.

13      Whereas, proof of the corpus delecti is required in
14  all criminal cases, there are three basic elements in the
15  proof of a crime: 1) The occurrence of loss or injury,
16  and in the instant case there was no loss or injury
17  upon alleged victim James McGrath by the alleged victim
18  own admittance through his voluntary statement and
19  preliminary hearing testimony.

20          2) Criminal causation of that loss or
21  injury, and in the instant case there was no criminal
22  causation through clear and convincing evidence as the
23  alleged victim James McGrath own admission when he
24  testified at preliminary hearing that the perpetrator did
25  not enter room only stood at door, said sorry closed the
26  door and left without incident.

27          3) The identity of the defendant as the

Page 4

1. perpetrator of the crime, and in this instant offense the
2. alleged victim James McGrath testified under oath that
3. Mr. Hayes was not the perpetrator of the alleged offense
4. and stated he was 100% sure of it.
5.    Whereas for a crime to exist, there must be an injured
6. party. There can be no penalty imposed on Mr. Hayes because
7. of his exercise of constitutional rights, as in the instant
8. case there was no injured party and no trespass or unlawful
9. entry as Mr. Hayes had the absolute right to go to hotel
10. room that he had a valid hotel key to access through the
11. means of a registered hotel guest that had given him
12. valid permission to enter. The claim and exercise of a
13. constitutional right cannot be converted into a crime.
14.    Whereas, the Justice Court Judge in case # 19F01534X
15. Dept. H erred when she issued the affidavit of probable
16. cause when there was no slight or marginal evidence that
17. Mr. Hayes committed the crime of Burglary, to bound over the
18. charge to district court and this is a fundamental miscarriage
19. of justice due to the fact that the Justice Court Judge did
20. not proceed on the facts and the laws of the state of Nevada
21. that have greatly prejudice the Plaintiff and he has suffered
22. irreparable injury.

Defendant's Continue:

Clark County is a government entity organized and existing under the laws of the State of Nevada and its political entity of the State of Nevada. At all times, defendant Clark County, Nevada possessed the power and authority to adopt policies and prescribe rules, regulations, and practices effecting all facets of the training, supervision, control, employment, assignment and removal of individuals members of the Clark County District Attorney's office and of its employees, agents contractors and/or servents. In this case defendants Steve Wolfson, William Rowles, Michael Dickerson acted through agents, employees, servents, and contractors including its policy makers.

City of Las Vegas, is a government entity organized and existing under the laws of the State of Nevada and its political entity of the State of Nevada. At all times, defendant City of Las Vegas possessed the power and authority to adopt policies and prescribe rules, regulations and practices effecting all facets of the training, supervision, control, employment, assignment and removal of individuals members of the Las Vegas Metropoliten Police Department and of its employees, agents, contractors, and/or servents. In this case, defendant City of Las Vegas acted through agents, employees, servents, and contractors, including its policymakers including defendants Joseph Lombardo, E. Versin, A. Fox, L. Jex, D. McEloy all officers of LVMPD.

Steve Wolfson was at all times relevant to this action the district attorney of Clark County District attorney's office was acting under color of state law. He is sued in this action in his individual capacity as to plaintiff's claims arising under 28 U.S.C 1983 and is sued in his individual capacity and official capacity as to plaintiff's state law claims.

Joseph Lombardo was at all times relevant to this action the Sheriff of LVMPD and was acting under color of state law. He is sued in this action in his individual capacity as to plaintiff's claims arising under 28 U.S.C 1983 and is sued in his individual and official capacity as to plaintiff's state law claims

E. Varsin, A. Fox, L. Fox, D. McElroy and other unknown officers are and were at all times relevant to this action, police officers employed by City of Las Vegas and were acting under color of law. They are sued in their individual capacities as to plaintiff's claims arising under 28 U.S.C 1983 and are sued in there individual and official capacities as to plaintiff's state law claims.

Mirage Hotel and Casino/MGM was at all times relevant to this action the location of false imprisonment, detaining, and seizing of plaintiff without probable cause or reasonable grounds and was acting under color of state law. Mirage Hotel and Casino/MGM is sued in this action in its individual capacity as to plaintiff's claims arising under 28 U.S.C 1983 and is sued

1  in its individual and official capacity as to plaintiff's
2  state law claims
3       James J. McGoth, was at all times relevant to this
4  action the allege victim was acting under color of state
5  law. He is sued in this action in his individual
6  capacity as to plaintiff's claims arising under 28 USC
7  1983 and is sued in his individual capacity and
8  official capacity as to plaintiff's state law claims
9       Plaintiff are informed, believe and thereon allege
10 that all defendant's were the agents, employees,
11 contractors, and/or co-conspirators of the other
12 defendant's and each of them were acting within
13 the course and scope of their agency, employment and/or
14 concert of action and are vicariously liable, jointly
15 and severally for the actions, inactions, and/or
16 omissions of themselves and of the other defendant's
17 which proximately resulted in the physical, emotional
18 and future damages to the plaintiff as herein alleged.

19
20                  Nature of the Action
21       This is an action for money damages, declaratory and
22 injunctive relief brought pursuant to 42 USC 1983 and 1988,
23 the first, fourth, fifth, and fourteenth Amendments to the
24 United States constitution, and under the laws of the State
25 of Nevada against the named defendant's, police officers
26 of the LVMPD and the CCDA in their individual and official
27 capacities, against the City of Las Vegas, Clark County, Mirage

1    Hotel and Casino/MGM, James McBroth, Steve Wolfson, Joseph

2    Lombardo, William Rowles, Michael Dickerson, E. Versin,

3    A. Fox, L. Jex, and D. McElroy.

Case 2:20-cv-02122-RFB-BNW   Document 1-1   Filed 01/28/20   Page 10 of 40

### C.   CAUSE(S) OF ACTION

### CLAIM 1

The following civil rights have been violated: rights, privileges, and/or immunities secured by the United States Constitution and federal laws... "Malicious Prosecution" under 42 USC 1983

> Supporting Facts: [Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

County of Clark acting under the color of State law prosecuted plaintiff with malice and without probable cause denying plaintiff equal protection and due process of law. As the charges against plaintiff were entirely false and no greater evidence of this than the allege victims own testimony that he was 100% sure that plaintiff was not the perpetrator of allege event through his sworn testimony at preliminary hearing. In addition, allege victims testimony of events that occurred did not meet the elements of the charge of Burglary, when he testified that perpetrator only stood in doorway said sorry and left without incident. Plaintiff's 14th Amendment claim against defendant's (Mirage Hotel, James McGrath, Hotel Security) who were involved by making false criminal charges concerning the plaintiff to law enforcement officials that caused the state to institute proceedings against plaintiff for being of the Negro race. Clark County District Attorney's office criminal proceedings terminated in such a manner

1  as to indicate his innocence short of a trial on the
2  merits. That showed the opinion of the prosecuting party
3  and the court that the action lacked merit ~~the entire~~
4  ~~matter actions~~ that prove the allegations in his complaint
5  that the criminal proceedings were initiated on the basis
6  of the defendant's intentional and knowingly false
7  accusations and malicious conduct. Defendant's engaged
8  in wrongful and bad faith conduct that was actively
9  instrumental in causing the initiation of legal proceedings.
10  Plaintiff argues that the state's pretrial deprivations of
11  his personal liberty violated his 4th Amendment rights.
12  Defendant's Mirage Hotel and Casino security James
13  McGrath and MGM made false accusations and other-
14  wise unlawfully conspired against plaintiff with the
15  result that criminal proceedings were wrongfully
16  initiated in violation of constitutional rights of
17  plaintiff. Defendant's Mirage hotel and casino initiated
18  prosecution through fake evidence that plaintiff's hotel
19  room key was invalid when plaintiff had a valid
20  hotel room key issued to him from a registered hotel
21  guest. Defendant's deliberately and recklessly executed
22  the unlawful arrest of Plaintiff without probable cause.
23  As a direct and proximate result of defendant's actions as
24  alleged above, Plaintiff has been harmed has suffered and
25  will suffer loss of wages, salary, contractual benefits, business
26  profits, loss of personal property, and certain other incidental
27  and consequential economic expenses and losses, and will
28

Page 11

## ADDITIONAL FACTS OF THE CASE:

1  continue to suffer such actual damages in an amount exceeding
2  to prove at trial.
3      As a further and proximate result of defendant's unlawful
4  conduct plaintiff has become mentally upset, distressed
5  and aggravated requiring medical treatment. Plaintiff
6  claims emotional distress damages in amount to be
7  proven at trial.
8      The above-alleged unlawful conduct constitutes
9  oppression, fraud malice recklessness evil intent and/or
10  deliberate indifference to plaintiff's federally protected
11  rights thereby entitling plaintiffs to an award of
12  punitive damages (Smith v. Wade 461 U.S. 30)

**CLAIM 2**

The following civil rights have been violated: Violation of Civil Rights under 42 U.S.C. 1983 "False Arrests and False Imprisonment" 4th Amendment of the United States Constitution

Supporting Facts: [Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

A claim of unlawful arrest or imprisonment is cognizable under 1983 as a violation of the 4th Amendment, provided the arrest was without probable cause or other justification (Larson v. Neim 9 7.3d 1397 9th Cir 1993). Probable cause exists when an officer has reasonable trustworthy information of facts and circumstances that are sufficient to justify a reasonably cautious person's belief that an offense has been or is being committed (Stoot v. City of Everett, 582 7.3d 910 2009) A plaintiff may maintain a 4th Amendment false arrest claim where the officer who applied for the arrest warrant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause (Smith v. Almada 640 7.3d 931 9th Cir 2011)

Defendant's City of Las Vegas, Clark County, Steve Wolfson, deliberately and recklessly executed the unlawful arrests of plaintiff without probable cause. Whereby, there was No evidence that plaintiff committed Burglary nor unlawful use of hotel key. As a direct and proximate result of defendant's

## ADDITIONAL FACTS OF THE CASE:

actions, as alleged herein, Plaintiff has been harmed, has suffered, and will suffer loss of wages, salary, contractual benefits, business profits, loss of personal property, and certain other incidental and consequential economic expenses and losses, and will continue to suffer such actual damages in an amount according to proof at trial.

As a further and proximate result of defendant's unlawful conduct plaintiff has become mentally upset, distressed and aggravated requiring medical treatment. Plaintiff claims emotional distress damages in an amount to be proven at trial. The above-alleged unlawful conduct constitutes oppression, fraud, malice, recklessness, evil intent, and/or deliberate indifference to plaintiff's federally protected rights thereby entitling plaintiff to an award of punitive damages. (Smith v. Wade 461 U.S.30)

**CLAIM 3**

The following civil rights have been violated: Violation of Civil Rights under 42 U.S.C. 1983 Denial of Equal Protection and Due Process in Violation of the 14th Amendment and Nevada Common Law

> Supporting Facts: [Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

Plaintiff hereby repeat, reallege, and incorporate by reference his entire complaint as though fully restated herein. The due process clause of the 14th amendment protects individuals against deprivations of life, liberty, or property without due process of law (Board of Regents v. Roth 408 U.S 564) A procedural due process violation has two elements: 1) Plaintiff must show that the government has deprived them of life, liberty or property (Mathews v. Eldridge 424 U.S 319). 2) Plaintiff must show that the government deprived them of these constitutional protected interests without due process of law. A criminal defendant may sustain an action for damages against the state for deprivations of equal protection and due process relating to the lack of probable cause. Defendant's in their individual capacities and acting under color of law initiated the unlawful prosecution without probable cause that violated the terms of the plea agreement, after plaintiff's preliminary hearing defendant's withheld

Case 2:20-cv-02122-RFB-BNW    Document 1-1    Filed 11/28/20    Page 16 of 40

1   evidence and made misrepresentations of facts to the district
2   court to ensure that plaintiff would lose the negotiated
3   time served credit agreement for of 30 days in the Clark
4   County detention center with 30 days credit for gross-
5   misdemeanor in case No C-16-315718-1. Defendant's had
6   personal direct knowledge that plaintiff had not violated
7   the terms of his plea agreement.

8        As a direct and proximate result of defendant's
9   (Mirage hotel and casino, City of Las Vegas, Clark County,
10  Steve Wolfson) actions, as alleged above, plaintiff has been
11  harmed has suffered, and will suffer loss of wages, salary,
12  contractual benefits, business profits, loss of personal property,
13  and certain other incidental and consequential economic
14  expenses and losses, and will continue to suffer such
15  actual damages in an amount according to proof at trial.

16       As a further and proximate result of defendant's unlawful
17  conduct plaintiff has become mentally upset, distressed
18  and aggravated requiring medical treatment. Plaintiff claims
19  emotional distress damages in an amount to be proven at
20  trial.

21       The above-alleged unlawful conduct constitutes
22  oppression, fraud, malice, recklessness, evil intent, and/or
23  deliberate indifference to plaintiff's federally protected
24  rights. Thereby entitling plaintiffs to an award of punitive
25  damages.

26
27
28

Case 2:20-cv-02122-RFB-BNW    Document 1-0    Filed 01/28/20    Page 17 of 40

4th Claim for Relief "Intentional infliction of Emotional distress Nevada Common Law"

Plaintiff hereby repeat, reallege, and incorporate by reference his entire complaint as though fully restated herein:

Defendant's (all rofrance defendant's) conduct as alleged in the proceeding paragraphs was extreme and outrageous with the intent or reckless disregard for causing emotional distress to plaintiff. The plaintiff has suffered extreme emotional distress from defendant's causing the unlawful detention, arrest, and lost of liberty.

As a direct and proximate result of defendant's actions, as alleged above, plaintiff has been harmed, has suffered, and will suffer loss wages, salary, contractual benefits, business profits, loss of personal property, and certain other incidental and consequential economic expenses and losses, and will continue to suffer such actual damages in an amount according to proof at trial.

As a further and proximate result of defendant's unlawful conduct plaintiff has become mentally upset, distressed, and aggravated requiring medical treatment. Plaintiff claims emotional distress damages in an amount to be proven at trial.

The above-alleged unlawful conduct constitutes oppression, fraud, malice, recklessness, evil intent, and/or deliberate indifference to plaintiff federally protected rights thereby, entitling plaintiff to an award of punitive damages.

5th Claim for Relief (Violation of Civil Rights under 42 USC 1983) "Municipality Liability under Monell"

A local government unit or municipality can be sued as a person under 1983 (Monell v. Dept. of Social Services of City of New York 436 U.S 658 1978) by plaintiff seeking to impose liability on a municipality under 1983 must identify a municipal policy or custom that caused his injury (Board of the County commissioners of Bryant County v. Brown 520 U.S. 397 1997)

That at all times relevant herein the LVMPD, Mirage hotel and casino and the Clark County District attorney's office had an unwritten rule (policy), custom and practice of permitting and/or failing to address serious unlawful misconduct by LVMPD, Mirage hotel and casino, CCDA, CCDA deputy District attorneys through various methods including but not limited to: 1) refusing to turn over evidence in both criminal and civil cases even when ordered to do so by the court's of the State of Nevada. 2) making misrepresentations of fact to both courts and the media. 3) tampering with investigators and witnesses. 4) extorting individuals into giving up their rights.

Defendant's breached their duty by negligently tolerating and/or ratifying the custom, practice or policy of their police officers in detaining, seizing, and arresting citizens without probable cause or reasonable grounds. Misrepresenting material facts to judges, maliciously prosecuting citizens and violating citizens constitutional rights to due process and to freedom

Case 2:20-cv-02122-RFB-BNW   Document 1-1   Filed 01/28/20   Page 19 of 40

1   from unreasonable search and seizure, as manifested by
2   defendant's failing to properly screen individuals who apply
3   to become security and police officers and attorneys, and
4   failing to remove dangerous security and police, and irresponsible
5   attorneys from their ranks as manifested by defendant's
6   failure to conduct an internal investigation and inquiry
7   under the circumstances described herein.

8       As a direct and proximate result of defendant's actions
9   as alleged above, plaintiff has been harmed has suffered, and
10   will suffer loss of wages, salary, contractual benefits, business
11   profits, loss of personal property, and certain other incidental
12   and consequential economic expenses and losses and will
13   continue to suffer such actual damages in an amount
14   according to proof at trial.

15       As a further and proximate result of defendant's unlawful
16   conduct, Plaintiff has become mentally upset, distressed and
17   aggravated requiring medical treatment. Plaintiff claims
18   emotional distress damages in an amount to be proven at trial.

19       The above alleged unlawful conduct constitutes oppression,
20   fraud, malice, recklessness, evil intent, and/or deliberate indifference
21   to plaintiff's federally protected rights. Thereby, entitling plaintiff
22   to an award of punitive damages.

Case 2:20-cv-02122-RFB-BNW    Document 1-0    Filed 01/28/20    Page 20 of 40

1   6th ground for Relief "Negligent hiring, retention,
2   supervision, and Training"

3
4   Defendant's LVMPD, Mirage Hotel Casino, City of Las
5   Vegas, Clark County, Clark County District Attorney office owed
6   a duty to citizens such as plaintiff to exercise care in the
7   hiring, training, supervision of their security, police force,
8   and attorneys. So as to protect citizens from false arrests,
9   detention, false imprisonment, assault battery and the like
10  at the hands of poorly trained, supervised and unwisely hired
11  or unwisely retained security, police officers and attorneys.
12       Defendants breached their duty by negligently tolerating
13  and/or ratifying the custom, practice or policy of their police
14  officers in detaining, seizing and arresting citizens without
15  probable cause or reasonable grounds. Misrepresenting material
16  facts to judges, maliciously prosecuting citizens and violating
17  citizens constitutional rights to due process and to freedom
18  from unreasonable search and seizure, as manifested by
19  defendant's failing to properly screen individuals who apply
20  to become security and police officers and attorneys, and
21  failing to remove dangerous security, police and irresponsible
22  attorneys from their ranks as manifested by defendant's
23  failure to conduct an internal investigation and inquiry
24  under the circumstances described herein.
25       As a direct and proximate result of defendant's actions
26  as alleged above, Plaintiff has been harmed, has suffered and
27  will suffer loss of wages, salary, contractual benefits, business
28  profits, loss of personal property, and certain other incidental

and consequential economic expenses and losses and will continue to suffer such actual damages in an amount according to proof at trial.

As a further and proximate result of defendant's unlawful conduct. Plaintiff has become mentally upset, distressed and aggravated requiring medical treatment. Plaintiff claims emotional distress damages in an amount to be proven at trial.

The above-alleged unlawful conduct constitutes oppression, fraud, malice, recklessness, evil intent, and/or deliberate indifference to plaintiff's federally protected rights thereby entitling plaintiff to an award of punitive damages.

Prayer for Relief

Wherefore, Plaintiff prays that this court enter a judgment in his favor and against defendant's jointly and severally and award : 1) General damages in an amount to be proven at trial as to each and every claim herein but alleged to be in the excess of $ 1,000,000.00

2) Exemplary and/or punitive damages in an amount to be proven at trial as to each and every claim herein.

3) Prejudgment interests pursuant to law

4) Declaratory relief declaring defendant officers conduct to be unconstitutional.

5) Such other and further relief as the court deems just and proper.

Case 2:20-cv-02122-RFB-BNW    Document 1-1    Filed 11/20/20    Page 22 of 40

9)  Have you filed other actions in state or federal courts involving the **same or similar facts** as involved in this action? Circle one: Yes or No. If your answer is "Yes," describe each lawsuit. (If more than one, describe the others on an additional page answering the following questions.)

a)  Defendants: _____

b)  Name of court and docket number: _____

c)  Disposition (for example, was the case dismissed, appealed or is it still pending?):

_____

d)  Issues raised: _____

_____

_____

e)  Approximate date it was filed: _____

f)  Approximate date of disposition: _____

10)  Have you filed an action in federal court that was dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted? Circle one: Yes or No. If your answer is "Yes," describe each lawsuit. (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page answering the following questions.)

**Lawsuit #1 dismissed as frivolous, malicious, or failed to state a claim:**

a)  Defendants: _____

b)  Name of court and case number: _____

c)  The case was dismissed because it was found to be (circle one): (1) frivolous; (2) malicious; or (3) failed to state a claim upon which relief could be granted.

d)  Issues raised: _____

_____

_____

e)  Approximate date it was filed: _____

f)  Approximate date of disposition: _____

Case 2:20-cv-02122-RFB-BNW    Document 10    Filed 07/20/20    Page 23 of 40

**Lawsuit #2 dismissed as frivolous, malicious, or failed to state a claim:**

a)    Defendants: _____

b)    Name of court and case number: _____

c)    The case was dismissed because it was found to be (circle one): (1) frivolous;

       (2) malicious;  or (3) failed to state a claim upon which relief could be granted.

d)    Issues raised: _____

       _____

       _____

e)    Approximate date it was filed: _____

f)    Approximate date of disposition: _____

**Lawsuit #3 dismissed as frivolous, malicious, or failed to state a claim:**

a)    Defendants: _____

b)    Name of court and case number: _____

c)    The case was dismissed because it was found to be (circle one): (1) frivolous;

       (2) malicious;  or (3) failed to state a claim upon which relief could be granted.

d)    Issues raised: _____

       _____

       _____

e)    Approximate date it was filed: _____

f)    Approximate date of disposition: _____

### D.  REQUEST FOR RELIEF

I believe I am entitled to the following relief: General damages, exemplary and/or punitive damages, prejudgment interests pursuant to law), Such other and further relief as the court deems just and proper.

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** *See* 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

_____
(name of person who prepared or helped
prepare this complaint if not the plaintiff)

_____
(signature of plaintiff)

7-27-2021
(date)

**EXHIBIT 9**

Case 2:20-cv-02122-RFB-BNW    Document 10    Filed 07/28/20    Page 26 of 40

2/OVERVIEW.ORG

EXHIBIT 101

JUSTICE COURT, LAS VEGAS TOWNSHIP
CLARK COUNTY, NEVADA

STRAWMAN

THE STATE OF NEVADA,

          Plaintiff,

      -vs-

JAMES HOWARD HAYES, aka,
James Howard Hayes, Jr. #2796708,

          Defendant.

CASE NO:    19F01534X

DEPT NO:    14

CRIMINAL COMPLAINT

    The Defendant above named having committed the crime of BURGLARY (Category B Felony - NRS 205.060 - NOC 50424), in the manner following, to wit:   That the said Defendant, on or about the 26th day of January, 2019, at and within the County of Clark, State of Nevada, did willfully, unlawfully, and feloniously enter a hotel room, owned or occupied by MIRAGE HOTEL & CASINO, located at 3400 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada, with intent to commit larceny.

    All of which is contrary to the form, force and effect of Statutes in such cases made and provided and against the peace and dignity of the State of Nevada.  Said Complainant makes this declaration subject to the penalty of perjury.

PH:   1   /19
@ 10am

01/28/19

1/29/19

KSH
JCH
P/C

+ NO INTENT

+ insufficient charging document

+ MENS REC

+ compleintant said occupied @ 2:00AM I wasn't entering til 2:56AM; said I was completed

+ Hotel lock integrity

19F01534X/cb
LVMPD EV# 190100120467
(TK14)

W:\2019\2019F\015\34\19F01534-COMP-001.DOCX

EXHIBIT 102

LVMPD 22 (Rev. 08/17) WORD 2010

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
**TEMPORARY CUSTODY RECORD**
(* DENOTES OFFICER REQUIRED FIELD)

TCR10032R4

*ARREST DATE: 1/26/2019   *ARREST TIME: 03:45
*EVENT #: LLV180100120467

01-26-19 05:35 DSD RECORDS

**PAGE** 1 **OF** 1

- ☐ *DCSO*  27987708
- ☐ JUVENILE
- ☐ REBOOK
- CO. SET APPROVAL
- ☐ BODY CAM
- ☐ NEW ID
- ☐ UOF
- ☐ DNA SAMPLE TAKEN
- ☒ ABSENTIA
- ☐ FORM 6
- ☐ NDOC
- ☐ EXT TO LAS VEGAS

*INTAKE NAME (AKA, ALIAS, ETC.)
LAST HAYES   FIRST JAMES   MIDDLE HOWARD

*HOME ADDRESS (STREET & AND STREET NAME)
4735 DECKOW E.

BLDG./APT.#  #21

*CITY LAS VEGAS   *STATE NV   *ZIP 89169

TRUE NAME: LAST Hayes  FIRST James  MIDDLE Howard JR.

*DATE OF BIRTH 2/2/1970
*RACE B
*HGT/BTH N M
*SEX M
*HEIGHT 5'10"
*WEIGHT 220
*HAIR BLK
*EYES BRO

*SOCIAL SECURITY # 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
*CITIZENSHIP USA
*PLACE OF BIRTH TOLEDO, OH

☐ US VETERAN
☐ ACTIVE MILITARY
☐ CITIZEN'S ARREST
☐ SPEAKS ENGLISH

*LOCATION OF CRIME (STREET ADDRESS, CITY, STATE, ZIP)
3400 LAS VEGAS BLVD S   LAS VEGAS NEVADA 89109

*LOCATION OF ARREST (STREET ADDRESS, CITY, STATE, ZIP)
3400 LAS VEGAS BLVD S   LAS VEGAS NEVADA 89109

*ALIEN REGISTRATION #  *EVENT# / MC#  LLV180100120467

| *WAR TYPE | *COURT JURIS | *WARRANT # / CASE # | *NOC CNTS | *NOC CODE | *CATEGORY | *CHARGE LITERAL | *ORD / NRS | *BAIL |
|---|---|---|---|---|---|---|---|---|
| PC | JC | | 1 | 50442 | F | ATT BURGLARY | 205.090.2 | 5000 |

*DONS HIT*

*OTHER JURISDICTION:

PC -- PROBABLE CAUSE   BS -- BOARDMAN SURRENDER   BW -- BENCH WARRANT   AW -- ARREST WARRANT   RM -- REMAND   GJ -- GRAND JURY INDICTMENT

**TIME STAMP AT BOOKING**

*ARRESTING OFFICER SIGNATURE   E VARSIN *PRINTED NAME   16262 *P#   LAS VEGAS *AGENCY

*TRANSPORTING OFFICER SIGNATURE   E VARSIN *PRINTED NAME   16262 *P#   LAS VEGAS *AGENCY

UNLAWFUL DISSEMINATION OF THIS RESTRICTED INFORMATION IS PROHIBITED.
VIOLATION WILL SUBJECT THE OFFENDER TO CRIMINAL AND CIVIL LIABILITY.

**FIRST APP DATE:**
TIME:
COURT:  ☐ MUNICIPAL  ☐ JUSTICE
☐ STD BAIL  ☐ O.R. REL
☐ PC  ☐ I.A.D.
JUDGE:

**TIME STAMP AT RELEASING**

*EMERGENCY CONTACT  None
*RELATIONSHIP
*PHONE NUMBER
*EMAIL ADDRESS

NAME
POSITION:
AGENCY
DATE:
BY:  PLW

RELEASE TO: DA'S OFFICE
LAS VEGAS METROPOLITAN POLICE DEPARTMENT

JAN 26 2019

PUD:  ☐ TN  ☐ RT  ☐ LT  ☐ RI  ☐ LI   SCORE: 6402 + same
DOC DIST #
P# SI-22300

☐ POLICE RECORDS COPY  ☐ COURTS COPY  ☐ DSD RECORDS COPY  ☐ PROCESSING COPY

☐ PUD:  TN  RT  LT  RI  LI   SCORE:
P#
REL REV #

EXHIBIT 103

## LAS VEGAS METROPOLITAN POLICE DEPARMENT
# DECLARATION OF ARREST REPORT

TCR1003254

| ☐ County Jail | ☐ City Jail | ☐ Adult | ☐ Juvenile | Bureau: CCAC | | |
|---|---|---|---|---|---|---|

| ID# | EVENT # | ARRESTEE'S NAME (LAST) | (FIRST) | (MIDDLE) | SSN# |
|---|---|---|---|---|---|
| 2796708 | LLV190100120467 | HAYES | JAMES | HOWARD | 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 |

| RACE | SEX | DOB | HGT | WGT | HAIR | EYES | POB |
|---|---|---|---|---|---|---|---|
| B | M | 2/2/1970 | 5'10" | 220 | BLK | BRO | TOLEDO |

| ARRESTEE'S ADDRESS    STREET | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 4735 DECKOW | LAS VEGAS | NV | 89169 |

| OCCURRED | | ARREST | | LOCATION OF ARREST (NUMBER, STREET, CITY, STATE, ZIP CODE) |
|---|---|---|---|---|
| DATE: 1/26/2019 | TIME: 02:00 | DATE: 1/26/2019 | TIME: 03:45 | 3400 LAS VEGAS BLVD S LAS VEGAS NEVADA 89 |

LOCATION OF CRIME (NUMBER, STREET, CITY, STATE, ZIP CODE)
3400 LAS VEGAS BLVD S LAS VEGAS NEVADA 89109

CHARGES / OFFENSES
PC - JC - 50442 - F - ATT BURGLARY

CONNECTING REPORTS (TYPE OR EVENT NUMBER)
FELONY ARREST PACKET

The undersigned makes the following declarations subject to the penalty of perjury and says: That I am a peace officer with the Las Vegas Metropolitan Police Department, Clark County, Nevada, being so employed for a period of approximately 2 year(s).

That I learned the following facts and circumstances which lead me to believe that the above named subject committed or was committing the offenses above at the location of 3400 LAS VEGAS BLVD S  LAS VEGAS NEVADA 89109 and that the offense(s) occurred at approximately 02:00 hours on the 26th day of January, 2019.

**Details for Probable Cause:**

(Body Worn Camera Available)

On January 26th, 2019 while operating as marked patrol units 7M94, Officers E. Varsin P#16252 and A. Fox P#16559 along with marked patrol unit 7M96, Officers L. Jex P#16622 and D. McElroy P#16995 responded to a call for service at The Mirage Hotel 3400 S Las Vegas Blvd reference a subject in custody for a possible attempted burglary.

Upon officers arrival we made contact with Mirage hotel security. Security stated that a victim had called the front desk and reported a black male that had entered his room without his permission while he was sleeping. Hotel security had a subject in custody that had been identified via his California Driver's License as HAYES, JAMES DOB 2/2/1970. Mirage Security Officer Apolonio Batoon said that around 0256 hours via security surveillance footage, Hayes was seen entering elevator bank 9-16 and then seen exiting from elevator bank 2-8. Security said that this means that Hayes had to have taken the elevator to another floor in order to enter at one bank and exit at another.

Security Officer Brandon Huang was contacted and stated the following:

On 26 January 2019 at approximately 0300 l, Security Officer Brandon Huang, responded to a report of a man entering a persons room without permission. The man refused to identify himself and attempted to leave property. At main valet Officer Erhart read the man a trespass warning in accordance with NRS 207.200. Control instructed us to bring the man to processing. He refused and was placed in mechanical restraints. I secured and double locked the restraints. We walked back to the processing without further issue.

Officers than made contact with the victim who identified himself verbally as McGroth, James DOB 4/18/1958. McGroth stated the following:

I was asleep at approximately 2:00 AM on 1/26/19. I heard my door open. A man walked in approximately 5 feet into my room. I was startled and sat up in bed. The man was dark complected and wearing a white jacket. The man saw me. He

*Wherefore, Declarant prays that a finding be made by a magistrate that probable cause exists to hold said person for preliminary hearing (if charges are a felony or gross misdemeanor) or for trial (if charges are misdemeanor).*

Arresting Officer: E VARSIN                                    P#: 16252

LVMPD 602 (Rev 02/18) Word 2013

Case 2:20-cv-02122-RFB-BNW    Document 1-1    Filed 01/28/20    Page 29 of 40

Exhibit
104

Page 1 of 1

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
**VOLUNTARY STATEMENT**

Event # 190100120467

THIS PORTION TO BE COMPLETED BY OFFICER

| Specific Crime | | | | | | | | Date Occurred | Time Occurred |
| ATTEMPT BURGLARY | | | | | | | | 01-26-2019 | 0300 |

Location of Occurrence: 3400 S. LAS VEGAS BLVD LV NV 89109    THE MIRAGE
Sector/Beat: M2    ☐ City  ☒ County

Your Name (Last / First / Middle): Huang, Brandon, James
Date of Birth:     Social Security #:

| Race | Sex | Height | Weight | Hair | Eyes | Work Schdl. (Hours) | (Days Off) | Business / School |

Residence Address: (Number & Street)    Bldg./Apt.# City    State Zip Code
Res. Phone:
Bus. Phone:

Bus. (Legal) Address: (Number & Street) 3400 S Las Vegas Blvd.    Bldg./Apt.# City Las Vegas    State NV Zip Code 89109
Occupation:    Depart Date (If visitor):

Best place to contact you during the day: Mirage
Best time to contact you during the day: 2245-0645
Can You Identify the Suspect?  ☒ Yes  ☐ No

DETAILS: On 26 January 2019 at approximately 0300 I, Security Officer Brandon Huang, responded to a report of a man entering a person's room without permission. The man refused to identify himself and attempted to leave property. At main valet Officer Eckhart read the man a trespass warning in accordance with NRS 207.200. Control instructed us to bring the man to processing. He refused and was placed in mechanical restraints. I secured and double locked the restraints. We walked back to processing without further issue.

I HAVE READ THIS STATEMENT AND I AFFIRM TO THE TRUTH AND ACCURACY OF THE FACTS CONTAINED HEREIN. THIS STATEMENT WAS COMPLETED AT (LOCATION) Mirage
ON THE 26 DAY OF January AT 0328 (AM / PM). Am.

Witness/Officer: _____ (SIGNATURE)
Witness/Officer: HAYES, JAMES 8352 (PRINTED)
LVMPD 63 (REV. 6-08)

SIGNATURE OF PERSON GIVING STATEMENT

Case 2:20-cv-02122-RFB-BNW    Document 10    Filed 07/26/20    Page 30 of 40

EXHIBIT
105

Page 1 of 1

## LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## VOLUNTARY STATEMENT

Event # 190102120467

| THIS PORTION TO BE COMPLETED BY OFFICER | | |
|---|---|---|
| Specific Crime ATTEMPT BURGLARY | Date Occurred 01-26-2019 | Time Occurred 0300 |
| Location of Occurrence 3400 S. LAS VEGAS BLVD LV, NV 89109 THE MIRAGE | Sector/Beat M2 | ☐ City ☑ County |

Your Name (Last / First / Middle): McGrath / James / J
Date of Birth 4/18/58    Social Security # 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

| Race CAUS | Sex M | Height 6' | Weight | Hair | Eyes | Work Schd. (Hours) | (Days Off) | Business / School Customatic |
|---|---|---|---|---|---|---|---|---|

Residence Address: (Number & Street) 4024 Palomar Blvd    Bldg/Apt# City Lexington    State KM Zip Code 40513    Res. Phone: X (859) 312-7517

Bus. (Local) Address: (Number & Street)    Bldg/Apt# City    State Zip Code    Bus. Phone:

Best place to contact you during the day    Best time to contact you during the day    Occupation    Depart Date (if visitor)

Can You Identify the Suspect? ☑ Yes ☐ No

DETAILS X I was asleep at approximately 2:00 AM on 1/26/19. I heard my door open. A man walked in approximtly 5' into my room. I was startled and sat up in bed. The man was dark completed and wearing a white jacket. The man saw me. He said "sorry" then left my room and closed door.

I HAVE READ THIS STATEMENT AND I AFFIRM TO THE TRUTH AND ACCURACY OF THE FACTS CONTAINED HEREIN. THIS STATEMENT WAS COMPLETED AT (LOCATION) 3400 S LAS VEGAS BLVD LV NV 8910 9 THE MIRAGE ON THE 26TH DAY OF January AT 0359 (AM / PM), 2019.

Witness/Officer: _____ (SIGNATURE)

Witness/Officer: HAYES, JAMES (PRINTED)

SIGNATURE OF PERSON GIVING STATEMENT

LVMPD 88 (REV. 6-08)

Case 2:20-cv-02122-RFB-BNW   Document 10   Filed 07/26/20   Page 31 of 40

EXHIBIT
106

Page 1 of 1

## LAS VEGAS METROPOLITAN POLICE DEPARTMENT
## VOLUNTARY STATEMENT

Event # 190100 20467

**THIS PORTION TO BE COMPLETED BY OFFICER**

Specific Crime: ATTEMPT BURGLARY

Location of Occurrence: 3400 S. LAS VEGAS BLVD. LV, NV 89109 MIRAGE

Date Occurred: 01-26-19
Time Occurred: 0300
Sector/Beat: M2
☐ City  ☑ County

Your Name (Last / First / Middle): ERHART, RYAN ALEX
Date of Birth: 02-11-1978
Social Security #:

Race: WHITE  Sex: M  Height: 6'0"  Weight: 220 lbs  Hair: BRN.  Eyes: BRN.
Work Sched. (Hours):  (Days Off):
Business / School: THE MIRAGE

Residence Address: (Number & Street)  Bldg./Apt.# City  State  Zip Code
Res. Phone:

Bus. (Local) Address: (Number & Street) 3400 S. LAS VEGAS BLVD  Bldg./Apt.# City LAS VEGAS  State NV  Zip Code 89109
Bus. Phone: 702-791-7175
Occupation: SECURITY

Best place to contact you during the day: THE MIRAGE
Best time to contact you during the day:
Can You Identify the Suspect? ☑ Yes  ☐ No

DETAILS: On Saturday 1/26/18, at approximately 0300 hrs, I made contact with a middle aged black male adult in front of the Atrium and requested to see his legal I.D. The subject in question claimed his I.D. was in his vehicle. He claimed to be meeting a friend in the main Valet. When we arrived in main Valet, I informed him that he was going to be trespassed from the property. I then read the subject in question the NRS. 207.200 trespass. Dispatch then instructed myself and Security Officer Huang to place the subject in mechanical restraints, and escort him to processing for questioning. I used the rear wrist lock to restrain the subject so he could be placed in a mechanical restraints.

I HAVE READ THIS STATEMENT AND I AFFIRM TO THE TRUTH AND ACCURACY OF THE FACTS CONTAINED HEREIN. THIS STATEMENT WAS COMPLETED AT (LOCATION) 3400 S. LAS VEGAS BLVD. LV, NV 89109
ON THE 26TH DAY OF JANUARY AT 0359 (AM / PM), 2019.

Witness/Officer: _____ (SIGNATURE)

LVMPD 5313 (PRINTED) HAYES, JAMES P# 14252
P 68 (REV. 5-98)

Page 9 of ___
SIGNATURE OF PERSON GIVING STATEMENT



# EXHIBIT "D"

EXHIBIT D

**Page 1**

```
 1   CASE NO: C338412-1

 2   DEPT NO:  14

 3

 4         IN THE JUSTICE COURT OF LAS VEGAS TOWNSHIP

 5              COUNTY OF CLARK, STATE OF NEVADA

 6

 7

 8   THE STATE OF NEVADA,      )

 9        Plaintiff,           )

10        vs.                  )  CASE NO. 19F01534X

11   JAMES HOWARD HAYES, JR., )

12        Defendant.           )

13   _____                   )

14             REPORTER'S TRANSCRIPT

15                     OF

16              PRELIMINARY HEARING

16         BEFORE THE HONORABLE AMY CHELINI

17              JUSTICE OF THE PEACE

18            Tuesday, February 26, 2019
                     10:00 a.m.
19

20   APPEARANCES:

21   For the State:      WILLIAM ROWLES, ESQ.
                         DEPUTY DISTRICT ATTORNEY
22
     For the Defendant:  MICHAEL SANFT, ESQ.
23

24
     Reported by:   KRISTINE A. FLUKER, CCR NO. 403
25
```

**Page 2**

```
               I N D E X

WITNESSES FOR THE STATE:            PAGE

RYAN ERHART

  Direct Examination by Mr. Rowles     6
  Cross-Examination by Mr. Sanft      11

OFFICER AUSTIN FOX

  Direct Examination by Mr. Rowles    14
  Cross-Examination by Mr. Sanft      16
  Redirect Examination by Mr. Rowles  20

JAMES MCGRATH

  Direct Examination by Mr. Rowles    21
  Cross-Examination by Mr. Sanft      26
  Redirect Examination by Mr. Rowles  30


            E X H I B I T S
                 (none)
```

**Page 3**

```
                              Electronically Filed
                              2/28/2019 8:23 PM
 1   LAS VEGAS, CLARK COUNTY, NEVADA, FEB. 26, 2019
                              Steven D. Grierson
                     10:00 A.M.  CLERK OF THE COURT

 2             P R O C E E D I N G S

 3        THE COURT: James Howard Hayes, Sr.

 4        He's present in custody with Mr. Sanft.

 5        What are we doing?

 6        MR. SANFT: Your Honor, we're going forward

 7   with the preliminary hearing.

 8        THE COURT: You are going forward.  Okay.

 9        MR. ROWLES: The State is ready to proceed,

10   Your Honor.  We anticipate calling three witnesses.

11        I have two housekeeping matters before the

12   Court, if I may?

13        THE COURT: Go for it.

14        MR. ROWLES: Judge, the State did file an

15   Amended Criminal Complaint this morning.  I believe it

16   was provided to Mr. Sanft sometime ago.  It adds one

17   count of gross misdemeanor unlawful possession of hotel

18   key card.

19        THE COURT: Okay.

20        MR. ROWLES: Second, Your Honor, the State

21   did extend an offer to Mr. Hayes to plead guilty to one

22   count of burglary.

23        As a result or in exchange for his plea to

24   Count 1, the State would agree to stand by his

25   negotiations in the Department 19 case in exchange for
```

**Page 4**

```
 1   him stipulating to felony treatment in that matter, and

 2   in exchange for him stipulating to small habitual

 3   treatment in this particular case and a sentence of 5 to

 4   12 and a half years in the Nevada Department of

 5   Corrections.

 6        I understand that that offer is relatively

 7   stiff for a pre-preliminary hearing offer; however, this

 8   is an individual who is currently on parole for

 9   committing the exact same offense from the Harrah's

10   Hotel Casino.  That's why the State's position is as it

11   is.

12        THE COURT: Okay.

13        MR. ROWLES: It's my understanding that he's

14   been extended that offer and he has discussed it with

15   Mr. Sanft, and he's rejected that offer.

16        THE COURT: All right.  That's the case?

17        THE DEFENDANT: Yes, ma'am.

18        THE COURT: All right.  Go ahead and have a

19   seat next to Mr. Sanft.

20        If there's any other witnesses in this case

21   -- everyone just get out of the courtroom.

22        MR. ROWLES: Your Honor, I apologize.  I

23   have a third matter to bring to the Court's attention.

24        THE COURT: Of course.

25        MR. ROWLES: Given the fact that he had
```

Case 2:20-cv-02122-RFB-BNW    Document 1-1    Filed 07/20/20    Page 34 of 40

**5**

1  previously been convicted of burglary, in the event of
2  conviction of Count 1, this would be treated for
3  sentencing enhancement purposes as a second offense,
4  which extends the punishment from a mandatory -- or a 1
5  to 10 to a mandatory prison sentence of a 2 to 15. I'm
6  just bringing that to the defendant's attention at the
7  time.
8       THE COURT: All right. Do you understand?
9       THE DEFENDANT: Yes. I just heard that.
10  Yes, ma'am.
11       THE COURT: All right. Are all of the
12  witnesses out of the courtroom?
13       MR. ROWLES: Besides my first witness, yes.
14       THE COURT: Okay. Let's go.
15       MR. ROWLES: State's first witness is Ryan
16  Erhart.
17       THE COURT: Erhart, come on up. Good
18  morning, sir. Raise your right hand, please.
19       Whereupon,
20            RYAN ERHART,
21  having been first duly sworn to testify to the truth,
22  the whole truth and nothing but the truth, was examined
23  and testified as follows:
24       THE CLERK: Please be seated. State your
25  name and spell your full name for the record.

**6**

1       THE WITNESS: My name is Ryan Erhart. First
2  name is spelled R-y-a-n. Last name Erhart, E-r-h-a-r-t.
3       THE COURT: Go ahead, State.
4       DIRECT EXAMINATION
5  BY MR. ROWLES: Thank you, Your Honor.
6       Q. Sir, how are you currently employed?
7       A. As a full-time employee, a security officer at
8  Mirage Hotel & Casino.
9       Q. How long have you worked there?
10       A. Coming on three years March 9th.
11       Q. January 26th, 2019, were you employed as a
12  security officer at the Mirage Hotel & Casino?
13       A. Yes.
14       Q. Is the Mirage located here in Las Vegas, Nevada?
15       A. Yes, it is, 3400 South Las Vegas Boulevard.
16       Q. And on that day were you working at the Mirage?
17       A. Yes, I was.
18       Q. At some point in the morning on January 26th,
19  2019, did you receive a call for service regarding an
20  individual who entered a room of another guest?
21       A. I did.
22       Q. Can you walk us through the initial steps that
23  you took at that time?
24       A. I received a call on the radio to make contact
25  with the black male adult, BMA for short on the radio.

**7**

1       I had a description. He was wearing black
2  pants with the white jacket. He was a questionable
3  suspect or suspect, supposedly entered a room that day
4  that wasn't registered to him.
5       I made contact with him right in front of
6  our atrium, which is right in front Tom Colicchio's
7  Steakhouse.
8       THE COURT: In front of what?
9       THE WITNESS: Tom Colicchio's Steakhouse.
10       THE COURT: Spell that. I couldn't
11  understand a work.
12       THE WITNESS: Tom, T-o-m, Colicchio I
13  wouldn't be able to spell.
14       THE COURT: Oh, Colicchio?
15       THE WITNESS: Yes, Colicchio.
16       THE COURT: Okay. That's just for a clear
17  record.
18       THE WITNESS: I understand.
19       MR. ROWLES:
20       Q. So you made contact with the individual that you
21  believed to be the person who entered the room?
22       A. Yes, that fit that description.
23       Q. Do you see that person here in court today?
24       A. I do.
25       Q. Can you please point to him and describe an

**8**

1  article of clothing that he's wearing today?
2       A. Blue jump suit, BMA, right over here next to the
3  yes.
4       THE COURT: The record will reflect the
5  identification of the defendant.
6       MR. ROWLES:
7       Q. At that point in time did you place the -- did
8  you detain the individual?
9       A. I explained to him that we were going to have to
10  detain him. He was is question for an incident that
11  happened upstairs in our hotel.
12       He informed me that -- I asked him if he can
13  accompany me voluntarily to our processing room, our
14  holding room for if Metro has to be involved.
15       Q. Did he comply with you?
16       A. Not at first. He said that he had to meet
17  somebody out at our main valet, and that once he did
18  that, then he would voluntarily go back with me to
19  processing.
20       Q. Did you allow him to go to the valet?
21       A. He pretty much walked to the valet. He was
22  refusing to stop. I stayed with him the entire way to
23  the doors.
24       We got out to the main valet and I asked him
25  where his so-called friend was. At that time I read him

9

1  our trespass card, the NRS 207.20, and informed him that
2  he had been trespassed. And when I told him I was going
3  to trespass him, he stood there and he acknowledged it
4  and I told him, you know, he needed to leave.
5          Then we got the call shortly after from our
6  dispatch to place him in mechanical restraints and
7  escort him back to the processing room for further
8  questioning.
9  Q. Did you eventually do that?
10 A. Yes, we did.
11 Q. When you had him back in the room, did you
12 conduct a search of the defendant?
13 A. We did, myself and one other officer.
14 Q. Did you find anything of note when that search
15 occurred?
16 A. He said he didn't have his ID, and we found his
17 ID. And he also had a Mirage room key. It was an exact
18 -- the picture on the front was a Terry Fader room key,
19 but it's one of the Mirage Hotel room keys that we use.
20 Q. Now, as a security officer at the Mirage Hotel &
21 Casino, are you aware of the security procedures that
22 take place when an individual tries to enter the
23 elevators to go to the rooms?
24 A. Yes, I am.
25 Q. Does the Mirage place security at the bank of the

10

1  elevators?
2  A. We do. It's not 24-hour surveillance, but it is
3  between the hours of 10:00 p.m. and 6:00 a.m. in the
4  morning.
5  Q. What is the purpose of those security officers?
6  A. The purpose of those security officers is to
7  prevent anyone that does not have a room key not and is
8  not a registered guest to allow access up to the hotel
9  towers without having a room key to a room or being a
10 registered guest or a guest of a registered guest.
11         So then we ran his name through our system
12 called Opera, and he didn't come back as a registered
13 guest.
14 Q. So when you searched him, he had a hotel key card
15 for the Mirage?
16 A. Yes.
17 Q. Which would have allowed him to bypass security
18 at the elevators?
19 A. Yes.
20 Q. That night, however, when you searched his name
21 in the system that the Mirage maintains at operates, was
22 he a registered guest?
23 A. He was not a registered guest.
24         MR. ROWLES: Nothing further, Your Honor.
25         THE COURT: Cross?

11

1              CROSS-EXAMINATION
2  BY MR. SANFT:
3  Q. How does it work if you are a guest of a guest?
4  A. If you're a guest of a guest, usually they don't
5  have room keys. What we do is we have them notify the
6  guest to come down and meet them, and they have to
7  acknowledge us. We have to acknowledge that they know
8  who the guest is.
9          But it's very rare. And, like I said, if
10 he's a guest in the hotel, they're usually not given a
11 key. Because you have to have -- you have to be
12 registered to the room to be able to have possession of
13 a key.
14 Q. All right. Let me ask you this then. You say
15 you have to be registered to a room to have possession
16 of a key?
17 A. Um-hum.
18 Q. Is that a yes?
19 A. Yes.
20 Q. Are you telling this Court and us that when I
21 registered at the Mirage, I sign some document saying
22 that the key that I possess I cannot give to any other
23 person? Is that what you're telling this Court?
24 A. Pretty much, yes.
25         THE COURT: Is that yes? What's pretty much

12

1  mean?
2          THE WITNESS: It's yes.
3          MR. SANFT: All right.
4  Q. And just to make sure we're clear, you say you
5  worked -- you work for security at the Mirage. How long
6  have you been working there, sir?
7  A. This March 9th will be three years. I started
8  there March 9th of 2016.
9  Q. And with regards to the key itself, did you ever
10 verify what room that key was for?
11 A. To my knowledge, no, the key was not verified
12 what it was to. We had a description from a witness,
13 stating him in the room.
14 Q. That's not my question. My question is, the key
15 that you took from my client, did you ever run that key
16 to determine what room it was for?
17 A. To my knowledge I did not, no. If another
18 officer did, I do not know.
19 Q. So at this particular point your testimony is
20 that this person was up in a room. You don't know
21 anything about that room or what happened, necessarily.
22 All you know is that you detained him at some point when
23 he was walking out to the valet area and you 86'd him
24 and then you brought him back into the hotel area.
25 A. We were informed that any time --

13

1   Q. Let me make sure we're clear. I'm talking about
2   you. Not about we. You specifically. Your role here
3   in this case and what you're testifying about is
4   basically you detained this man outside by the valet,
5   you 86'd him, and then at some point you brought him
6   back into the casino and brought him into your holding
7   area in the back of the casino?
8   A. Yes.
9   Q. Anything else besides that?
10  A. No.
11          MR. SANFT: No further questions, Your
12  Honor.
13          THE COURT: Anything else?
14          MR. ROWLES: No.
15          THE COURT: Sir, thank you very much for
16  your testimony. You are free to go. Just don't discuss
17  it with anyone. Okay?
18          THE WITNESS: Thank you.
19          THE COURT: Next witness.
20          MR. ROWLES: Officer Austin Fox.
21  Whereupon,
22          OFFICER AUSTIN FOX,
23  having been first duly sworn to testify to the truth,
24  the whole truth and nothing but the truth, was examined
25  and testified as follows:

14

1          THE CLERK: Please be seated. State your
2   name and spell your full name for the record.
3          THE WITNESS: Austin Fox, A-u-s-t-i-n,
4   F-o-x.
5          THE COURT: Thank you, sir.
6          Go ahead.
7          DIRECT EXAMINATION
8   BY MR. ROWLES:
9   Q. Sir, how are you currently employed?
10  A. With the Las Vegas Metropolitan Police
11  Department.
12  Q. How long have you worked with the police
13  department?
14  A. One year, ten months.
15  Q. January 26, 2019, were you working as a police
16  officer with the Las Vegas Metropolitan Police
17  Department?
18  A. Yes, sir.
19  Q. Did you receive a call for service to respond to
20  the Mirage Hotel & Casino?
21  A. Yes, sir.
22  Q. What was the nature of the call?
23  A. It was a black male adult in custody for entering
24  a hotel guest room without the occupant's consent.
25  Q. Did you eventually arrive on scene?

15

1   A. Yes, sir.
2   Q. When you arrived on scene was there an individual
3   in custody by security?
4   A. Yes, sir.
5   Q. Or was there an individual detained by security?
6   A. Yes, sir.
7   Q. Do you see that person here in court today?
8   A. Yes, sir.
9   Q. Can you please point to him and describe an
10  article of clothing that he's wearing today?
11  A. Blue CCDC jumpsuit.
12          MR. ROWLES: Your Honor, may the record
13  reflect the identification of the defendant?
14          THE COURT: Yes, so reflected.
15          MR. ROWLES:
16  Q. When you arrived on scene with the defendant
17  having been detained by security at that point in time,
18  did you eventually make contact with the room occupant
19  in the matter?
20  A. Yes, sir.
21  Q. And at that point in time did you conduct a
22  show-up with the room occupant?
23  A. Yes, sir.
24  Q. Was he able to positively identify the individual
25  that you just identified in court?

16

1   A. Yes, sir.
2          MR. ROWLES: Nothing further, Your Honor.
3          THE COURT: Cross?
4          CROSS-EXAMINATION
5   BY MR. SANFT:
6   Q. Were you the first officer on the scene?
7   A. I am not sure.
8   Q. The reason I ask that question is, you understand
9   based upon Metropolitan policy and procedure, if you're
10  the first officer, you're technically the primary
11  officer that's responsible for the investigation, right?
12  A. Yes, sir.
13  Q. Were you officer responsible for the
14  investigation in the case?
15  A. Yes, sir.
16  Q. Did you write a report?
17  A. Yes, sir.
18  Q. Now, during the course of your investigation did
19  you find anything on my client with regards to a room
20  key?
21  A. There was a room key found on him. I'm not sure
22  if I was the officer who searched him.
23  Q. But as the primary officer that's responsible for
24  the overall investigation, did you do anything with that
25  room key to verify whether he was an invited guest of

17

1 the Mirage?
2    A. **Mirage stated that he was not an invited guest.**
3    Q. And when you say Mirage stated, who stated to you
4 that he was not --
5        MR. ROWLES: Objection. Hearsay.
6        MR. SANFT: I'm not asking about what was
7 said. I'm asking as to who said it. That's not
8 hearsay.
9        THE COURT: Overruled.
10        MR. SANFT:
11    Q. Please.
12    A. **One of the security personnel.**
13    Q. Do you recall who that person was?
14    A. **No, sir.**
15    Q. Was that somebody that you put into your report
16 as part of your writing of the report as to what
17 happened on this particular night?
18    A. **I would have to look back at my report.**
19    Q. Just to verify, I'm going to tell you right now,
20 to cut to the chace, you don't put anybody in that
21 report. But with regards to that information, would
22 that have been information that you would have sought if
23 you had conducted an investigation in this case as to
24 whether or not my client had a legal basis to be at the
25 Mirage at that time?

18

1    A. **I was told he did not.**
2    Q. I understand you were told that. But -- okay,
3 let me back up. So you relied upon somebody else's
4 representations to you as to whether or not my client
5 was there legally or not?
6    A. **Because they had access to hotel information.**
7    Q. All right. So these would have been the people
8 that were on staff, security officers or people at the
9 Mirage who was informing you that he did not have legal
10 permission to be present on the premises?
11    A. **Correct.**
12    Q. With regards to the individual that you did the
13 show-up with, the individual in this room, did you get a
14 chance to go into the room and look at the room?
15    A. **No, sir.**
16    Q. When you first met the individual, where was that
17 at? Was that up in the hallway of his room? Was it
18 down in the holding area of the Mirage? Where was it
19 at?
20    A. **It was outside. Not near the holding area, but**
21 **in the back hallway.**
22    Q. Okay. And with regards to my client, he was the
23 only person that you showed to this individual that was
24 the alleged victim in this case, right?
25    A. **Yes, sir.**

19

1    Q. No other person?
2    A. **No, sir.**
3    Q. Did you get a chance to look at the video in this
4 case from the Mirage?
5    A. **No, sir.**
6    Q. The surveillance video that would have shown my
7 client walking through or in a hallway or anything like
8 that. Did you ever --
9    A. **They don't have video of the hallways.**
10    Q. Did they have videos of the elevator banks where
11 people first walk to the banks to go up and down into
12 the rooms and so forth? Do you know if you saw that
13 video?
14    A. **I did not see it. I can't confirm if they had**
15 **the video or not.**
16    Q. Officer, did you have anyone else with you on
17 this particular night as a partner when you responded to
18 the call at the Mirage?
19    A. **Yes, sir.**
20    Q. Who was that other officer?
21    A. **Three other officers: Officer Jacks, Farson and**
22 **McElroy.**
23    Q. Now, once again, to make sure we're clear, as the
24 primary officer in this case you would be responsible
25 for collecting any other evidence that they may have

20

1 found in the course and scope of their duties as police
2 officers in relation to this case; would that be fair to
3 say?
4    A. **Yes, sir.**
5        MR. SANFT: I have no further questions,
6 Your Honor.
7        THE COURT: Anything?
8        REDIRECT EXAMINATION
9 BY MR. ROWLES:
10    Q. Sir, when you arrived to investigate a crime at
11 one of the hotel properties here, do you interact with
12 security?
13    A. **Yes, sir.**
14    Q. And do you take the information that they present
15 to you in determining whether there's probable cause for
16 an arrest?
17    A. **Yes, sir.**
18    Q. Now, as a police officer and having worked near
19 the Strip with the hotel properties here, is it your
20 understanding that all hotels employ their own security
21 details?
22    A. **Yes, sir.**
23    Q. And conduct their own internal investigations?
24    A. **Yes, sir.**
25        MR. ROWLES: Nothing further, Your Honor.

EXHIBIT

**21**

1    THE COURT: Anything else?

2    MR. SANFT: No, Your Honor.

3    THE COURT: All right. Officer, thank you

4    for your testimony. You're free to go. Just don't

5    discuss it with anyone.

6    THE WITNESS: Thank you. Yes, ma'am.

7    MR. ROWLES: Your Honor, the State's next

8    witness would be James McGrath.

9    THE COURT: Come on up, sir.

10   Whereupon,

11   JAMES MCGRATH,

12   having been first duly sworn to testify to the truth,

13   the whole truth and nothing but the truth, was examined

14   and testified as follows:

15   THE CLERK: Go ahead and have a seat. State

16   your first and last name and spell it for the record.

17   THE WITNESS: James McGrath. McGrath is

18   M-c-G-r-a-t-h.

19   THE COURT: Go ahead.

20   DIRECT EXAMINATION

21   BY MR. ROWLES: Thank you, Your Honor.

22   Q. Sir, I would like to turn your attention to the

23   weekend of January 25th, 2019, into the weekend of

24   January 26th or the day of January 26th. Were you at

25   the Mirage Hotel & Casino?

**22**

1    A. Yes.

2    Q. Were you here for a business trip?

3    A. Yes.

4    Q. Did you bring anybody with you during that

5    business trip?

6    A. No.

7    Q. Did you have any other guests or any occupants of

8    the hotel room that you stayed in at the Mirage?

9    A. No.

10   Q. Do you know a person by the name of James Howard

11   Hayes?

12   A. No.

13   Q. Have you ever given an individual by the name of

14   James Howard Hayes permission to enter one of your hotel

15   rooms?

16   A. No.

17   Q. If you could look around the entire courtroom and

18   see, have you ever given anyone in this courtroom

19   permission to enter the hotel room that you were at in

20   the Mirage that weekend?

21   A. No.

22   Q. I want to talk a little bit about what happened

23   on January 26, 2019, in the morning hours of that date

24   when you were at the Mirage. Can you walk us through

25   what happened in the morning hours?

**23**

1    A. I went to sleep somewhere around midnight. At

2    2:00 in the morning I heard my door open, and I set up

3    in bed and looked over at the door. At the door I left

4    the lights on to illuminate kind of the bathroom/closet

5    area, and I saw the door open with a person standing

6    there that I did not recognize. And he looked a little

7    bit startled. I was startled. He quickly left the

8    room.

9    Q. Do you see that person here in court today?

10   A. Yes.

11   Q. Could you point to him and describe an article of

12   clothing that he's wearing today?

13   A. An article of clothing? Blue.

14   Q. Can you point to him?

15   THE COURT: Where are you pointing?

16   MR. ROWLES:

17   Q. Do you -- take another look.

18   MR. SANFT: Your Honor. Just for the

19   record, he has identified somebody -- I'm sorry, can you

20   describe something about what the person wearing blue,

21   please?

22   THE WITNESS: He has a bracelet on his right

23   arm. No, wait. Never mind.

24   MR. ROWLES:

25   Q. Can you take another look around, sir?

**24**

1    THE COURT: Hold on. Just for the record,

2    he's identifying an in-custody who is sitting down.

3    THE WITNESS: Third one from the right.

4    THE COURT: Third one from the right. That

5    would be this defendant with the beard on him?

6    THE WITNESS: Yes.

7    THE COURT: Okay. Go ahead.

8    MR. ROWLES:

9    Q. How positive are you, sir?

10   A. Apparently not very positive at this point.

11   Q. Do you see anyone else in the courtroom --

12   MR. SANFT: Objection, Your Honor. I don't

13   understand why we're going with this line of questioning

14   now. He's already identified who he believes is the

15   person standing in the doorway. Now the State wants to

16   have another shot at the ring here. So I think he's

17   already identified who he believed was the person.

18   MR. ROWLES: That's fine, Judge. I'll move

19   on.

20   THE COURT: Yeah, it's sustained. I think

21   we've established that.

22   MR. ROWLES:

23   Q. At that point in time you said the individual

24   left the courtroom -- left the house?

25   A. Yes.

25

1    Q.  Or room.  Did you eventually make contact with
2  security?
3    A.  Yes.
4    Q.  When you made contact with security, did they
5  bring you to a holding area?
6    A.  Yes, they did.
7    Q.  Did they show you the individual that they had in
8  custody?
9    A.  Yes.
10   Q.  Was Metro there as well?
11   A.  Yes.  There were approximately six Metro
12 officers.
13   Q.  Did you identify the person that they had
14 detained as the individual in your room?
15   A.  Yes, and I identified him for a number of ways --
16 now I'm obviously questioning it -- but he was wearing
17 the same clothing that I saw in my room.  It was kind of
18 a white jacket or a white fleece maybe or something like
19 that.
20   Q.  And did you give a specific percentage as to
21 positive you were?
22   A.  At the time I said I was about 80 percent.
23       MR. ROWLES:  Nothing further, Your Honor.
24       THE COURT:  Cross?
25       CROSS-EXAMINATION

27

1  in --
2        MR. ROWLES:  Your Honor, I'm going to object
3  as to relevance.
4        THE COURT:  That's okay.  Overruled.
5        THE WITNESS:  I met probably four or five
6  people from my company at the hotel.
7        MR. ROWLES:
8    Q.  Do you know where at the hotel you were meeting
9  your people?
10   A.  Various places.  I don't remember specifically,
11 no.
12   Q.  Did you, during the time that you were with the
13 people from your group, have drinks and --
14   A.  Yes, I did.
15   Q.  What were you drinking that night?
16   A.  It was Maker's Mark 46.
17   Q.  Okay.
18       THE COURT:  I don't know what that is.  What
19 is that?
20       THE WITNESS:  It's a bourbon.
21       MR. SANFT:  Maker's Mark.
22       THE COURT:  Oh, okay.
23       MR. SANFT:
24   Q.  Now, with regards to Maker's Mark, how are you
25 drinking it?  Do you drink that neat?  Do you drink it

26

1  BY MR. SANFT:
2    Q.  Sir, what were you doing in Las Vegas at the
3  time?
4    A.  I was on a business trip.
5    Q.  Like a conference of some sort?
6    A.  Yes.
7    Q.  And when I say conference, is it one of the ones
8  where you go with other people in your industry and you
9  meet and talk about kinds of --
10   A.  Yes.  It was a furniture show.  It's actually the
11 furniture -- it's the marketplace near here.
12   Q.  So the marketplace that's right down here?
13   A.  Yeah.
14   Q.  And on this particular night you were in your
15 hotel room.  You were there about midnight.  Somewhere
16 around between that and 2:00 you went to sleep?
17   A.  Yes.
18   Q.  So prior to that were you out having a good time,
19 enjoying the Strip?
20   A.  No, I was on business.  And, no, I was not.
21   Q.  So what were you doing prior to midnight between
22 the hours --
23   A.  Oh, well, I mean, I had -- I went out to dinner.
24 Actually, no, I didn't.  I'm trying to think.  I hadn't
25 thought about that until just now.  I had just gotten

28

1  on the rocks?
2    A.  On the rocks.
3    Q.  Okay.  On the rocks.  Do you recall how many
4  drinks that you had that night prior to going to bed?
5    A.  Maybe three or four.
6    Q.  Okay.  Now, when --
7    A.  Let's go with three.
8    Q.  Three is good.  Now, in terms of that night, you
9  go to bed and you're laying in bed and then you say you
10 leave the light on.  Is that the light in the hallway of
11 the room or is it the one in the bathroom?
12   A.  So it's the light in the hallway.  As I remember,
13 it was sort of in front of the door.  And I think there
14 was a closet there and also the bathroom.  So just right
15 in that area, but it was not the bathroom light.
16   Q.  And the room that you were in, was that a single
17 bed or was it --
18   A.  Double bed.
19   Q.  Double bed.  And when you were sleeping in your
20 room on this night, which bed did you choose, one closer
21 to the bathroom or the one closest to the window?
22   A.  Closest to the window.
23   Q.  Okay.  So you said you heard basically at some
24 point the door open, and you looked over and you could
25 see someone standing there?

29

1    A. Direct line of sight.
2    Q. Right. So you said that he opened the door and
3    he looked startled that you were there?
4    A. Yes.
5    Q. He didn't say anything to you?
6    A. I thought he said "I'm sorry" or something like
7    that.
8              MR. ROWLES: Objection. Hearsay. Move to
9    strike.
10              THE COURT: I think he's just saying I
11    thought. I'm going to overrule it for right now.
12              MR. SANFT:
13    Q. So whatever was said in the room, did he take a
14    step into the room?
15    A. I thought he took a step in, but it was not very
16    far. It was right at the doorway and —
17    Q. Was that before or after he said what he said to
18    you?
19    A. It would have been before.
20    Q. And then he turned around and walked out?
21    A. Yes, and he closed the door.
22              MR. SANFT: Okay. I have no further
23    questions.
24              THE COURT: Anything else, State?
25              REDIRECT EXAMINATION

30

1    BY MR. ROWLES:
2    Q. Sir, do you wear glasses?
3    A. No.
4              MR. ROWLES: Nothing further.
5              THE COURT: Sir, thank you very much for
6    your testimony. You're free to go. Just don't discuss
7    it with anyone. Okay?
8              THE WITNESS: Okay.
9              THE COURT: Thank you, sir.
10              MR. ROWLES: Judge, I'll rest.
11              THE COURT: Okay.
12              MR. SANFT: Your Honor, I've spoken to my
13    client. He will respectfully decline his right to
14    testify at this preliminary hearing, and we will also
15    rest at this time.
16              THE COURT: All right. Sir, do you
17    understand that by not testifying today, I will not use
18    that against you in any way? Do you understand?
19              THE DEFENDANT: Yes, ma'am.
20              THE COURT: All right. And it's my
21    understanding that you are seeking -- you're listening
22    to the advice of counsel and not going to be testifying
23    today, right?
24              THE WITNESS: Correct.
25              THE COURT: All right. The State rests.

31

1    Defense rests.
2              MR. ROWLES: Submit for rebuttal, Your
3    Honor.
4              THE COURT: Submit.
5              MR. SANFT: Your Honor, we'll submit as
6    well.
7              THE COURT: All right. Sir, the purpose of
8    today is for preliminary hearing. It's slight or
9    marginal evidence that a crime was committed or that
10    these crimes were committed and that you committed it.
11              Based upon the testimony today with the
12    guest, even though he identified the wrong person, he
13    identified someone that night that came into his room
14    without permission.
15              A person was later detained. That person
16    was you. And you had the Mirage key in the pocket. So
17    I find that the State has than met its burden.
18              So it appears to me from the Complaint on
19    file that the following crimes were committed, to-wit:
20    Count 1, burglary; Count 2, unlawful use of hotel key.
21              I hereby order the said defendant to be held
22    to answer to said charges in the Eighth Judicial
23    District Court, County of Clark, State of Nevada, at the
24    following date and time.
25              THE CLERK: February 28th, 10:00 a.m., lower

32

1    level arraignment.
2              THE COURT: We'll remand him on Count 2 so
3    he gets his credit.
4              MR. SANFT: Thank you, Your Honor.
5              MR. ROWLES: Thank you, Judge.
6                        -oOo-
7    ATTEST: FULL, TRUE AND ACCURATE TRANSCRIPT OF
8    PROCEEDINGS.
9
10
11    /S/Kristine Fluker
12    _____
13    KRISTINE A. FLUKER, CCR NO. 403

5DCC
P.o. Box 208
Indian Springs, Nevada
89018

X-RAYED U.S. MARSHALS SERVICE

FILED _____ RECEIVED
ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JUL 29 2021

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY: _____ DEPUTY

United States District Court
District of Nevada
office of the Clerk
333 Las Vegas Blvd South, Room 1334
Las Vegas, Nevada
89101



